## Biddle's Appeal.  Murtland's Estate.

1. Judgments given within four or six months of the commencement of proceedings in bankruptcy, are valid if not given as preferences or taken with knowledge of insolvency or contemplated bankruptcy.

2. A state court having the right to enforce a lien, has power to decree distribution, and the assignee in bankruptcy must come into such court to claim his preference on the fund.

February 8th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal No. 112 to January Term 1871 from the District Court of *Philadelphia :* distributing the proceeds of the sheriff's sale of John Murtland's estate.

The fund in court arose from sales of real estate of defendant, under a mortgage, and of other real estate under a judgment for arrearages of ground-rent. The writs were issued respectively to May and September Terms 1869.

James H. Castle, Esq., was appointed auditor to report distribution of the fund beyond the amount of the foregoing liens, which were not disputed.

The claims presented to the auditor were as follows, viz :—

Joseph Francis, judgment entered August 14th 1868, on bond and warrant to confess, &c., dated August 13th, $3036.

Executors of A. J. Flomerfelt, deceased, judgment entered October 8th 1868, on bond and warrant, dated same day, for $1000.

George Powell, judgment entered November 12th 1868, on bond and warrant, &c., dated November 2d, for $1437.33.

Alonzo Gordon, judgment entered November 16th 1868, on bond and warrant, &c., dated November 11th, for $20,000.

From the auditor's report it appeared that Murtland had been a grain-carter in extensive business, and the owner of a large number of horses and carts, and of a considerable amount of real estate in Philadelphia. Previously to the summer and fall of 1868 there were no judgments against him; his credit was good, and he was then regarded as a man in comfortable circumstances, and by some was considered rich.

On the 16th of November 1868, two other judgments of $2000

and $4000 were entered on judgment-notes. On the 15th of February 1869, one of Murtland's creditors petitioned that he should be declared a bankrupt; on the 24th of the same month he was adjudged a bankrupt, and John Hunter and Craig Biddle appointed his assignees. Up to December 1869, a large number of smaller judgments were recovered against Murtland by adversary process. He died December 10th 1869.

The assignees claimed the whole fund on the grounds, 1st, that a state court had not jurisdiction to adjudicate a bankrupt's estate: 2d, that the judgments having been confessed within six months before filing the petition in bankruptcy, were void under the 35th section of the Bankrupt Act: 3d, that under the 39th section of the act, confessing the judgments was an act of bankruptcy, and therefore the judgments were void, and created no lien.

The auditor reported as his opinion that the District Court had jurisdiction in the matter, and "that before the assignees in bankruptcy can take this fund it must clearly appear that the judgments were given in fraud of the bankrupt law."

He found that the Francis judgment was for a bonâ fide debt, and having been given more than six months before the filing of the petition in bankruptcy, was not in fraud of the bankrupt law.

As to the Flomerfelt judgment, the executors, on the death of their testator, found amongst his assets notes against Murtland amounting to $1000. The attorney for the executors in whose hands the notes were placed for collection, believed Murtland's affairs to be in good order, but in pursuance of his duty as attorney required a judgment from Murtland, which he agreed to give.

The auditor found this claim to be in good faith, and allowed it.

George Powell held a note against Benjamin Sterling, and one against Charles Engle, amounting to $1437.33. Murtland was endorser on both. The notes had been discounted by Powell; when they became due, Murtland wished them renewed; Powell agreed to do so if Murtland would give a judgment to secure them; Murtland gave the judgment on which Powell's claim was founded. Powell brought suit on the notes against the drawers; the amount of Engle's note was recovered from him; Sterling could not be found; for the amount due on his note, $647.47, the auditor allowed the claim out of the fund, being of opinion that the judgment had been given bonâ fide.

Gordon, the plaintiff in the $20,000 judgment, was a bill-broker, and for a long time before the date of his warrant had bought and sold Murtland's paper; Murtland was considered a man whose credit was of the first class. At the commencement of these transactions with Gordon, Murtland represented that he had real estate worth $100,000, but could not collect his bills

until the first of the year; he required money to meet his maturing paper and make provision for further loans, until he could sell his real estate; in consequence Gordon took his judgment, and agreed to take up his maturing paper and negotiate further loans if necessary.

The auditor further reported that Murtland was the owner of real estate valued for tax purposes at $71,400; that although the proceedings in bankruptcy showed that he was actually insolvent in the summer and fall of 1868, yet the witnesses "failed to show that at that period of time they knew or believed him to be insolvent."

The auditor reported many facts bearing upon the questions considered by him, and further said :—

"Without going more fully into the facts as presented by the evidence, the auditor has not been convinced that John Murtland was insolvent, or in contemplation of insolvency or bankruptcy, when he gave the bond and warrant of attorney to Alonzo Gordon, in November 1868, or that Alonzo Gordon, when he received this bond, or on the day it was filed, believed, or had reasonable cause to believe, that John Murtland was insolvent, or acting in contemplation of insolvency, and in fraud of the Bankrupt Act. On the contrary, he is satisfied that Murtland at that time was the owner of real estate that could, by proper management, have been made to realize a large sum of money to be applied to the liquidation of his debts. That he did not at that time contemplate insolvency or bankruptcy, and that Gordon believed him to be solvent. Under these impressions of the facts, and with the view he entertains of the intention of the Bankrupt Law, he feels justified in awarding to Alonzo Gordon the balance of the fund in part payment of his judgment."

He found after deducting taxes, costs, expenses of audit, &c., that there remained $7493.99, which he distributed as follows :—

| | |
|---|---|
| To Joseph Francis . . . . . . . | $3140.39 |
| To Susanna Flomerfelt and Absalom Taylor, Ex'rs. . | 1022.50 |
| To George Powell . . . . . . . | 647.47 |
| To Alonzo Gordon . . . . . . . | 2683.63 |

The assignees on bankruptcy filed these exceptions to the report :—

1. The auditor erred in not awarding the fund to the assignees.

2. The auditor erred in awarding any part of the fund or moneys in the above cases to Alonzo Gordon on account of his alleged judgment.

The District Court confirmed the report of the auditor. The assignees appealed and assigned for error that the court erred in decreeing any part of the fund to others than the assignees.

*A. Thompson,* for appellants.—Confession of a judgment in

contemplation of bankruptcy to prefer one creditor is fraudulent and void and no lien attaches: McLean *v.* The Bank, 3 McLean 185; Buckingham *v.* McLean, 13 How. 152; James's Bankrupt Law 222; Gault *v.* McGrath, 8 Casey 392; Bank of Montgomery, 12 Id. 170; Taylor *v.* Cornelius, 10 P. F. Smith 187; James 159; Pavitt's Estate, 12 P. F. Smith 498; Bletz *v.* Haldeman, 2 Casey 403.

*R. C. McMurtrie* (with whom was *J. W. Paul*), for Gordon, appellee.

The opinion of the court was delivered, May 25th 1871, by

THOMPSON, C. J.—The money in the court below arose from a sale on a judgment for arrears of ground-rent against the bankrupt, and also upon a mortgage given by him. It was not pretended that either of these acts was affected by the bankrupt act, but the surplus after payment of them was distributed to subsequent lien-creditors, and it was contended by the assignees,

1st. That a state court could not distribute the fund among the creditors of the bankrupt.

2d. That the judgments to which it was distributed were in fraud of the 35th section of the Bankrupt Law.

As to the last of these objections the auditor fully and completely negatives them by showing that the judgments were not given as preferences, or taken by the several creditors with any knowledge of the insolvency or contemplated bankruptcy of the insolvent. He has not reported the testimony so that this court might see whether he erred in fact on this point or not. The report must therefore be regarded as conclusive as to this.

As to the first of these objections we have held, that a state court having a right to enforce a lien, it has the power to decree distribution, and it follows of course that the assignee must come into court and claim his preference on the fund if he has any, as did the appellants in this case. This view of the point like the last is also against the appellants, and the decree of distribution is affirmed, and appeal dismissed at the cost of appellants.